IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


VIRGINIA A. SOLOMON                    )
                                       )
v.                                     )          No. 2:10-0079
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security        )


To: The Honorable John T. Nixon, Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 16) should be denied.


## I. INTRODUCTION

On April 24, 2006, the plaintiff protectively filed an application for DIB, alleging a disability onset date of January 1, 1998, due to a "[b]ack problem, disorder of [the] coxxyn [sic],[1]

---

[1] The coccyx is also known as the tailbone. WebMD, "Tailbone (Coccyx) Injury," at http://www.webmd.com/fitness-exercise/tailbone-coccyx-injury.

arthritis, gerd [gastroesophageal reflux disease], nerves, anxeity [sic] and depression, bad allergies, [and] polps [sic] in nose." (Tr. 47-49, 116-18, 139, 143.)  Her application was denied initially and upon reconsideration. (Tr. 47-49, 51-54.)  A hearing before Administrative Law Judge ("ALJ") K. Dickson Grissom was held on December 2, 2008, and the plaintiff amended her alleged onset date to June 30, 1999. (Tr. 24-43.)  On June 8, 2009, the ALJ held a supplemental hearing. (Docket Entry No. 19; Tr. 500-06.)  The ALJ delivered an unfavorable decision on July 15, 2009 (tr. 15-21), and the plaintiff sought review by the Appeals Council. (Tr. 11.)  On June 29, 2010, the Appeals Council denied the plaintiff's request for review (tr. 1-3), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on January 2, 1953, and was 46 years old as of June 30, 1999,  her alleged onset date. (Tr. 28, 46.)  She attended college for two years and "received a business degree," and had worked as a billing clerk. (Tr. 29, 149.)

### A. Chronological Background: Procedural Developments and Medical Records

On October 29, 1997, Dr. Barrett F. Rosen, an examining orthopedist with Tennessee Orthopedic Alliance, opined that the plaintiff "is unable to sit for lengthy periods of time" because of "pain and significant tenderness" in her coccyx. (Tr. 291.)  From October of 1998, to December of 2002, the plaintiff presented to the emergency room at Cookeville Regional Medical Center ("CRMC") on several occasions with complaints of skin and throat irritation, heart burn, shortness of breath, and being anxious. (Tr. 231-52.)   She was diagnosed with allergies, a rash, a

Case 2:10-cv-00079   Document 23   Filed 05/30/12   Page 2 of 24 PageID #: 80

bronchospasm, anxiety, and GERD, and was prescribed Lortab, Benadryl, Zantac, and Vistaril.[2] Between April of 2000, and December of 2005, the plaintiff presented to Dr. Rosen on multiple occasions with complaints of pain in her ankle, lower back, coccyx, right leg, and feet. (Tr. 254-78.) The plaintiff explained that in the fall of 1989 she "[s]lipped on ice" and broke her tailbone, and as a result she has had "continue[d]" pain. (Tr. 266.) X-rays indicated that there were "significant changes" in her lumbar spine. (Tr. 270.) Dr. Rosen noted that the plaintiff had recurrent coccygeal pain and tenderness, had "mild limitation of motion," and received injections of Depo-Medrol and Marcaine;[3] diagnosed her with coccygeal pain; and prescribed Lortab, Vicodin, Soma, and Vioxx.[4] (Tr. 254-78.)

On June 19, 2004, the plaintiff returned to the emergency room at CRMC with complaints of a swollen throat and having difficulty breathing, and she was diagnosed with an allergic reaction and anxiety. (Tr. 363-64.) Between February of 2006, and October of 2008, the plaintiff presented to the Gordonsville Clinic with complaints of stress and anxiety. (Tr. 378-416, 484-87.) She was diagnosed with osteoarthritis, lower back pain, GERD, anxiety, depression, seizures, sinusitis, allergies, and insomnia, and prescribed Lortab, Xanax, Claritan, Phenergan, Lunesta, Dilantin, Prevacid, Soma, and Protonix.[5] *Id.*

---

[2] Lortab is a pain reliever, Benadryl and Vistaril are antihistamines, and Zantac is prescribed for heart burn. Saunders Pharmaceutical Word Book 86, 415, 758, 773 (2009) ("Saunders").

[3] Depo-Medrol is a corticosteroid and anti-inflammatory and Marcaine is a local anesthetic. Saunders at 210, 426.

[4] Vicodin is a pain reliever, Soma is a skeletal muscle relaxant, and Vioxx is a nonsteroidal anti-inflammatory drug ("NSAID") prescribed for arthritis. Saunders at 653, 753, 756.

[5] Xanax is used to treat panic disorders, Claritan and Phenergan are prescribed to treat allergies, Lunesta is used to treat insomnia, Dilantin is seizure medication, and Prevacid and Protonix are used to treat GERD. Saunders at 165, 227, 419, 551, 578, 590, 768.

3

On August 15, 2006, Dr. Horace F. Edwards, Ph.D., a nonexamining Disability Determination Services ("DDS") psychologist, completed a Psychiatric Review Technique Form ("PRTF") (tr. 294-307) and diagnosed the plaintiff with an anxiety related disorder. (Tr. 299.) However, he noted that "there is insufficient evidence in [the] file to evaluate [the] claimant's condition." (Tr. 306.) On September 6, 2006, Dr. Susan L. Warner, a nonexamining DDS physician, completed a "DDS Medical Consultant Analysis" and determined that the plaintiff's physical impairments were "not severe, singly or combined." (Tr. 308.) In August of 2007, the plaintiff presented to CRMC with complaints of seizures and pain in her teeth, neck, and chest. (Tr. 312-57.) She was diagnosed with seizures, GERD, hiatal hernia, gastritis, and anemia, and prescribed Ativan,[6] Benadryl, Dilantin, Lortab, Soma, and Prevacid. An MRI and CT scan of her brain demonstrated no significant abnormalities. (Tr. 351-52.)

On September 17, 2007, the plaintiff returned to Dr. Rosen "after an absence with recurrence of pain in her coccygeal area." (Tr. 377.) He diagnosed her with "[r]ecurrent coccydynia," gave her injections of Depo-Medrol and Marcaine, prescribed Soma and Lortab, and noted that "[s]he will go ahead otherwise [with] activities as tolerated." *Id.*

On December 12, 2007, Dr. Rosen completed a physical Medical Source Statement of Ability to Do Work-Related Activities ("Medical Source Statement") (tr. 373-76) and found that the plaintiff could lift/carry ten pounds occasionally and less than ten pounds frequently. (Tr. 373.) He opined that in an eight hour workday she could stand/walk for "at least two hours" and could sit for "less than 4 hours . . . with frequent times to stand," and that her ability to push/pull was not limited. (Tr. 373-74.) Dr. Rosen noted that the plaintiff's pain "often" "interferes with [her] attention and

---

[6] Ativan is prescribed for seizures. Saunders at 68.

4

concentration," that she is able to tolerate "[m]oderate" work stress, that she needs unscheduled breaks during an eight hour workday, and that her impairments will cause her to have good and bad days. (Tr. 374.) Dr. Rosen also found that the plaintiff could occasionally kneel, balance, and climb ramps, stairs, ladders, ropes, and scaffolds; should never crouch or crawl; and should "avoid concentrated exposure" to extreme cold and heat and to hazards. (Tr. 375-76.)

On September 16, 2008, the plaintiff presented to the emergency room at CRMC complaining of seizures. (Tr. 470-74.) She was diagnosed with seizure disorder and arthritis and was prescribed Dilantin. *Id.*

## B. Interrogatory Responses

On November 21, 2008, the plaintiff submitted answers to a series of interrogatories from the Social Security Administration. (Tr. 173-80.) She related that she was not able to work due to intense lower back pain, stiffness and pain in both of her hands, and depression; that in an eight hour day she is able to stand/walk for one hour and sit for three and a half hours; and that she can lift four pounds with one hand and eight pounds with both hands. (Tr. 174-77.) The plaintiff reported that she shops for groceries weekly, rarely attends church "because it is very difficult to sit," and is able to prepare simple meals, "do light dusting," sweep, and wash dishes. (Tr. 178.)

## C. Testimony at Hearings and Additional Medical Records

A hearing was held on December 2, 2008, and the plaintiff was represented by counsel and testified. (Tr. 24-44.) The plaintiff testified that she received a business degree from Columbia State Community College and had worked as an office manager, and that she has pain in her tailbone,

deteriorating lumbar disc disease, and severe arthritis in her right hand. (Tr. 34-35, 38.) She related that she used a "special" therapeutic chair at work, did not have to do any bending or filing, and would go home to rest at lunch. (Tr. 37-38.) The plaintiff explained that Dr. Rosen opined that she could not bend, sit/stand for long periods, or lift more than a gallon of milk, and that she should sit on a pillow with a small hole in it called a "doughnut." (Tr. 40-41.)

At the conclusion of the December 2, 2008, hearing, the ALJ explained that he was not able to make a determination of the plaintiff's condition "going back five [or] six years ago" without a consultative examination of the plaintiff's medical records. (Tr. 41.) Therefore, the ALJ provided the plaintiff's medical records and interrogatories to Dr. Susan M. Bland, a DDS consultative, nonexamining physician, to complete before a further hearing.[7] In addition, the ALJ allowed the plaintiff to submit additional information from Dr. Rosen about when the plaintiff became disabled. (Tr. 42.)

On March 12, 2009, Dr. Bland, completed a "Medical Interrogatory Physical Impairment(s)-Adults" form (tr. 479-82), and concluded that the plaintiff could lift/push/pull up to 20 pounds frequently and 40 pounds occasionally; stand/walk for six hours; and occasionally bend, stoop, crouch, crawl, kneel, and squat. (Tr. 481.) Dr. Bland opined that the plaintiff should not climb ladders and should "not work at unguarded heights, [or] around hazardous equipment/tools/machinery," and she noted that the plaintiff "[s]hould be allowed to use a cushion or 'Donut' to sit on . . . [and be] allow[ed] [a] sit-stand option." *Id.*

---

[7] The plaintiff's condition as of March 31, 2003, the plaintiff's date last insured, is critical to the determination of her entitlement to DIB. Although the plaintiff amended her alleged onset date to June 30, 1999, the interrogatories sent to Dr. Bland described the relevant time period as between January 1, 1998, and January 31, 2009. (Tr. 479.)

6

In a letter dated January 8, 2009, Dr. Rosen related that the plaintiff "had no significant x-ray findings," but that "her clinical condition has been such that the restrictions I have described [in the December 12, 2007, Medical Source Statement] have been in place at least since June of 2000 if not before that time." (Tr. 478.) In addition, medical records after the December 8, 2008, hearing were submitted. Specifically, in March and May of 2009, the plaintiff presented to Gordonsville Clinic and she was diagnosed with lower back pain, osteoarthritis, and GERD, and was prescribed Lortab, Xanax, Claritan, Lunesta, Soma, Dilantin, Phenergan, and Nexium.[8] (Tr. 483, 488, 495-96.) It was also noted that the range of motion in her lower back had decreased. (Tr. 488, 496.) In April of 2009, the plaintiff presented to Dr. Rosen with complaints of pain in her coccygeal region and arthritis in her upper back, right hand, and toes, and he injected her coccyx with Depo-Medrol and Marcaine. (Tr. 490, 493.)

On June 8, 2009, a supplemental hearing was held and the plaintiff was represented by counsel and the plaintiff and Jane Hall, a vocational expert ("VE"), testified. (Tr. 501-06.) The VE related that the plaintiff's job as a billing clerk was classified as sedentary and semi-skilled work. (Tr. 504.) The ALJ asked the VE what type of work the plaintiff could perform if she could lift/carry 40 pounds occasionally and 20 pounds frequently; could stand/walk/sit for 6 hours in an eight hour day, "provided that she be allowed to sit on a cushion or preferably a doughnut;" was precluded from climbing ladders, ropes, or scaffolds, and working "around hazards such as dangerous and moving machinery, unprotected heights;" could only occasionally climb stairs and ramps, stoop and bend from the waist, and crouch and crawl; and could not drive. (Tr. 504-05.) The VE replied that the plaintiff could perform her past relevant work. (Tr. 505.) The ALJ then asked the VE what type

_____

[8] Nexium is used to treat GERD. Saunders at 489.

of work the plaintiff could perform if she had the same limitations and was "required to have a sit/stand option," and the VE answered that she could still perform her past relevant work. *Id.*

Finally, the ALJ asked the VE what work the plaintiff would be able to perform if she could lift ten pounds occasionally and less than 10 pounds frequently, stand two hours in an eight hour workday, and sit less than four hours in an eight hour workday "with frequent times to stand," and "would need to alternate between sitting and standing during the day" and "[w]ould often have pains severe enough to interfere with her attention and concentration." *Id.* The VE answered that she would be precluded from working. *Id.*

### III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on July 15, 2009. (Tr. 15-21.) Based on the record, the ALJ made the following findings:

1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2003.

2) The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of June 30, 1999 through her date last insured of March 31, 2003 (20 CFR 404. 1571 *et seq.*).

3) Through the date last insured, the claimant had the following severe impairment: chronic coccydynia (20 CFR 404.1520(c)).

\* \* \*

4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526.)

\* \* \*

8

5)      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift, carry, and push/pull up to 40 pounds occasionally and 20 pounds frequently; stand and/or walk six hours in an eight hour day; sit six hours in an eight hour day if allowed to sit on a cushion, or preferably the "donut" cushion. She is precluded from any climbing of ladders, ropes or scaffolds; and limited to no more than occasional climbing of stairs and ramps, bending from the waist to the floor, crouching, crawling, kneeling or squatting. She is precluded from work around hazzards, such as dangerous or moving machinery or unprotected heights, and she is precluded from the operation of motor vehicles. In addition, she should have a sit/stand option.

* * *

6)      Through the date last insured, the claimant was capable of performing past relevant work as a billing clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

* * *

7)      The claimant was not under a disability, as defined in the Social Security Act, at any time from June 30, 1999, the alleged onset date, through March 31, 2003, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-21.)


# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g).  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  The Commissioner's

9

decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she

10

seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). *See Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 24, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed

11

impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in significant numbers the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997)). *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate

12

circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).


**B. The five step inquiry**

In this case, the ALJ resolved the plaintiff's case at step four of the five-step process. (Tr. 21.) At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since June 30, 1999, the alleged onset date of disability, through her date last insured of March 31, 2003. (Tr. 17.) At step two, the ALJ concluded that the plaintiff's chronic coccydynia was a severe impairment. *Id.* At step three, the ALJ determined that the plaintiff's impairment did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, and that she had the RFC to lift, carry, and push/pull up to 40 pounds occasionally and 20 pounds frequently and to stand/walk/sit six hours in an eight hour day if she were "allowed to sit on a cushion, or preferably the 'donut' cushion;" that she was limited to no more than occasional climbing of stairs

13

and ramps, bending from the waist to the floor, crouching, crawling, kneeling or squatting; and that she was precluded from climbing ladders, ropes or scaffolds, from working around hazzards, such as dangerous or moving machinery or unprotected heights, and from driving. (Tr. 18.) At step four, the ALJ concluded that the plaintiff could perform her past relevant work as a billing clerk. (Tr. 21.)

## C. The Plaintiff's Assertions of Error

The plaintiff contends that remand is appropriate since the record is incomplete because it does not contain the transcript of her supplemental hearing. Docket Entry No. 17, at 9. However, on January 28, 2011, the Commissioner filed a copy of the transcript of the plaintiff's June 8, 2009, supplemental hearing. Docket Entry No. 19, at 1-9. Since the supplemental hearing transcript is a part of the record and available to this Court for review, the record is complete and remand is not warranted for that reason.

The plaintiff also argues that the ALJ erred in rejecting the findings of her treating physician, Dr. Rosen, and that he failed to properly evaluate her subjective complaints of pain. *Id.* at 10-13.

### 1. The ALJ properly assessed the medical findings of the plaintiff's treating physician.

The plaintiff contends that the ALJ erred by "rejecting" Dr. Rosen's Medical Assessment. Docket Entry No. 17, at 9-11. Given the regularity with which Dr. Rosen examined the plaintiff (tr. 253-293, 373-77, 490, 493), he is classified as a treating source under 20 C.F.R. § 404.1502.[9]

---

[9] A treating source is the plaintiff's
own physician, psychologist, or other acceptable medical source who provides you,
or has provided you, with medical treatment or evaluation and who has, or has had,
an ongoing treatment relationship with you. Generally, we will consider that you
have an ongoing treatment relationship with an acceptable medical source when the

14

Generally, an ALJ is required to give "controlling weight" to the medical opinion of a treating physician, as compared to the medical opinion of a non-treating physician, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (quoted in *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. Aug. 31, 2010), and *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)). This is commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544 (6th Cir. 2004).

The ALJ did not assign controlling weight to Dr. Rosen's Medical Source Statement. (Tr. 20-21.) Even if a treating source's medical opinion is not given controlling weight, it is "still entitled to deference and *must be weighed using all of the factors provided in 20 C.F.R. 404.1527 . . . .*" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. Nov. 9, 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

---

medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1502.

*McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 30 (6th Cir. Aug. 19, 2009) (citing *Wilson*, 378 F.3d at 544); *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. Aug. 8, 2006) (quoting 20 C.F.R. § 404.1527(d)(2)-(6)).  The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. § 404.1527(d)(2); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Brock v. Comm'r of Soc. Sec.*, 2010 WL 784907, at *2 (6th Cir. Mar. 8, 2010).  The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Cole*, 661 F.3d at 937 (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *5), and so that the plaintiff understands the disposition of her case. *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

The ALJ focused on supportability in concluding that Dr. Rosen's Medical Source Statement should be assigned "little weight." (Tr. 20.)  The ALJ explained that

> [i]n a letter written in January of 2009, Dr. Rosen stated that the claimant had no significant x-ray findings, but that based on "her clinical condition", the restrictions he described in the medical assessment of December 2007 had existed since at least June 2000.  However, the only clinical observations noted by Dr. Rosen in his treatment notes was [sic] that the claimant had tenderness with mild limitation of motion, presumably in the coccygeal/lumbar spine area.  Little weight is given to Dr. Rosen's opinion, as it is inconsistent with his own treatment notes, which do not indicate that the claimant reported or exhibited any significant limitation of function with regard to her spinal condition; and with Dr. Rosen's own observation that there were no significant findings on lumbar spine x-rays.

(Tr. 19-20) (citations to the record omitted).

Dr. Rosen's Medical Source Statement showed that the plaintiff could lift/carry ten pounds occasionally and less than ten pounds frequently and stand/walk for "at least two hours" and sit for "less than 4 hours . . . with frequent times to stand" in an eight hour work day; that her ability to push/pull was not limited; that her pain "often" "interferes with [her] attention and concentration;"

16

that she is able to tolerate "[m]oderate" work stress;" that she needs unscheduled breaks during an eight hour workday; that her impairments will cause her to have good and bad days; that she could occasionally kneel, balance, and climb ramps, stairs, ladders, ropes, and scaffolds; that she should never crouch or crawl; and that she should "avoid concentrated exposure" to extreme cold and heat and to hazards. (Tr. 373-76.) On January 8, 2009, he related "that the restrictions I have described [in the Medical Source Statement] have been in place at least since June of 2000 if not before that time." (Tr. 478.)

However, Dr. Rosen's treatment notes belie the severity of the restrictions that he assigned the plaintiff in his Medical Source Statement. First, between April of 2000, and December of 2005, the plaintiff presented to Dr. Rosen every three to six months and he noted that she had coccygeal pain and tenderness (tr. 254-78) but also that she had only "some" or "mild" limitation of motion. (Tr. 269-70.) Next, during that nearly five and a half year period, Dr. Rosen's treatment plan for the plaintiff had minimal variation. (Tr. 254-78.) He injected the plaintiff's coccygeal area with Depo-Medrol and Marcaine, recommended physical therapy, and prescribed Lortab, Vicodin, Soma, and Vioxx. *Id.* The Commissioner contends that Dr. Rosen's unchanging treatment plan indicates that the prescribed treatment was "effective in treating [the plaintiff's] coccygeal pain" (Docket Entry No. 22, at n.17) and the Court agrees since Dr. Rosen noted that she "did well" or "responded well" after receiving the injections (tr. 268, 275, 278) and, in June of 2003, the plaintiff related that her treatment was "[working] effectively." (Tr. 266.)

Further, in September of 2007, Dr. Rosen diagnosed the plaintiff with coccygeal pain but determined that "[s]he will go ahead otherwise [with] activities as tolerated" (tr. 377), and in January of 2009, he noted that the plaintiff "had no significant x-ray findings." (Tr. 478.) In sum,

17

Dr. Rosen's Medical Source Statement was not supported by his own treatment notes or the objective medical evidence in the record. Therefore, the ALJ did not err in assigning "little weight" to his findings. (Tr. 19-20.) He focused on the factor of supportability, provided "good reasons," as required by SSR 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. § 404.1527(d)(2)), and there is substantial evidence in the record to support his determination.

### 2. The ALJ properly evaluated the plaintiff's subjective complaints of pain.

The plaintiff argues that the ALJ erred in evaluating the credibility of her subjective symptoms. Docket Entry No. 17, at 11-13. Specifically, she asserts that Dr. Rosen's treatment notes support her subjective complaints of pain, and that the ALJ erred in discounting her claim that she filed an application for disability in 2003, and in evaluating her complaints of arthritic hand pain. *Id.*

First, Dr. Rosen treated the plaintiff on multiple occasions between April of 2000, and December of 2005 (tr. 254-78), but as discussed *supra*, the ALJ correctly assigned "little weight" to his Medical Source Statement because his treatment notes also did not support those findings, and, similarly, his treatment notes do not support the severity of her subjective complaints of pain. Although the record includes documentation confirming that the plaintiff contacted the SSA in May of 2004, and an application was completed for her to sign (tr. 193-96), there is no indication in the record that she ever submitted a signed application. However, the plaintiff testified that she had filed an application, but she was finally informed that the SSA lost her application. (Tr. 31.) The ALJ chose to discount the plaintiff's testimony in this regard.

18

Whether or not the ALJ properly considered the plaintiff's testimony, his credibility determination was not based solely on whether the plaintiff truthfully testified that she had filed a prior disability application. The ALJ determined that the plaintiff's

> allegations regarding her limitations [were] less than fully credible. The treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges. In addition, there are a number of inconsistencies which detract from the claimant's credibility. The claimant reported that she had filed an application for benefits in 2003;[10] however, there is no indication in the Social Security records that this was so, and the undersigned finds it hard to believe that the claimant would have waited three additional years to reapply for benefits if this had been the case. In addition, in April 2006, the same month that the claimant applied for benefits, she told her primary care provider that her husband had lost his job, which suggests that this was the reason that she applied for benefits at that time. The claimant alleged that she had been given special accommodations in performing her job as a billing clerk in a physician's office; however, there is no objective evidence that this was so. The claimant reported that Dr. Rosen had discussed with her the possibility of lumbar spine surgery; however, there is no mention in the medical records of such. In addition, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She reported that she prepared meals; read books, magazines, novels, did crossword puzzles; watched television for two hour periods; did some light household chores; grocery shopped once per week; and drove two to three times a week prior to the time she began having convulsions/seizures in 2007. One would not expect someone who experienced a disabling level of pain to be able to concentrate adequately to prepare meals, read, do crossword puzzles and watch television for extended periods of time, as the claimant indicated doing.[11]

(Tr. 20-21) (citation to record omitted).

---

[10] It appears that the plaintiff was incorrect about the date and, if she ever submitted a signed application, it was in 2004, not 2003.

[11] The Court questions the propriety of the ALJ's reliance upon the lack of evidence--other than the plaintiff's testimony--that her former employer had provided accommodations for her, and questions the ALJ's conclusion that someone with disabling pain is unable to read or watch television for prolonged periods of time. Regardless, however, the plaintiff did not assert error in this regard and there is otherwise substantial evidence in the record to support the ALJ's determination that her subjective complaints of disabling pain are less than fully credible.

19

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F.3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. See 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th

20

Cir. 1986), set forth the basic standard for evaluating such claims.[12] The *Duncan* test has two

prongs. The first prong is whether there is objective medical evidence of an underlying medical

condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two

parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from

the condition; or (2) whether the objectively established medical condition is of such a severity that

it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require

objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d

1066, 1071 (3rd Cir. 1984)).

In this case, the ALJ concluded that the plaintiff's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms," thus satisfying the first prong of the

*Duncan* test. (Tr. 19.) Given that the second prong of the *Duncan* test consists of two alternatives,

the plaintiff must only meet one of the following two elements: the objective medical evidence

"confirms the severity of the alleged pain arising from the condition" or the "objectively established

medical condition is of such a severity that it can reasonably be expected to produce the alleged

disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in

20 C.F.R. § 404.1529(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms,

persistence, or intensity of her pain simply because current objective medical evidence does not fully

corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical

---

[12] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has
since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d
at 1039 n.2.

records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).[13]

In making his credibility determination, the ALJ relied on the medical records from examining and nonexamining sources, as discussed *supra*, and on objective diagnostic testing, the plaintiff's daily activities, and "a number of inconsistencies which detract from the claimant's credibility." (Tr. 19-20.) First, in January of 2009, Dr. Rosen noted that the plaintiff "had no significant x-ray findings." (Tr. 478.) Next, the ALJ pointed to the plaintiff's own report that, as of November of 2008, she was able to prepare meals; read books, magazines, and novels; do crossword puzzles; watch television for two hour periods; do light household chores; and shop for groceries; and, prior to 2007, she was able to drive. (Tr. 20, 178.) The ALJ also noted the lack of corroboration in the record for her testimony that she had special accommodations at her prior job as a billing clerk (tr. 37-38) and that she had discussed lumbar spine surgery with Dr. Rosen.[14] (Tr. 37.) Further,

_____

[13] The seven factors under 20 C.F.R. § 404.1529(c)(3) include: (i) the plaintiff's daily activities, (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms, (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on her back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

[14] Again, it is not clear why the plaintiff's testimony about her employer's accommodations needed to be corroborated or why the lack of such corroboration reflects on her credibility. *See* n.11 *supra*. In addition, the ALJ's conclusion that there is no corroboration that Dr. Rosen discussed lumbar spine surgery with the plaintiff is misplaced. At the December 2, 2008, hearing the plaintiff testified that she was "starting to experience some lumbar disc disease . . . ." Immediately thereafter the ALJ asked the plaintiff: "And through the years has Dr. Rosen talked with you about the possibilities of having surgery?" The plaintiff responded that he had addressed surgery with her "from the very beginning." (Tr. 37.) Since the plaintiff testified that she had "*start[ed]* experienc[ing] some lumbar disc disease" (emphasis added), but Dr. Rosen had talked with her about

22

Dr. Rosen noted that the plaintiff "did well" or "responded well" after receiving injections of Depo-Medrol and Marcaine in her coccyx (tr. 268, 275, 278) and the plaintiff related that her treatment was "[working] effectively." (Tr. 266.)

In sum, the medical records from examining and nonexamining sources, the objective diagnostic testing, the plaintiff's daily activities, and the effectiveness of her prescribed medication indicates that her impairments cause her a certain amount of pain, but that same record medical evidence does not support her subjective complaints that her pain is disabling.

The plaintiff also appears to contend that the ALJ erred in his assessment of the plaintiff's credibility because she testified that she had arthritic stiffness and pain in both hands but there is no indication in the record that she complained to any medical source during the relevant time period. Docket Entry No. 17, at 11-12. At step two, the ALJ concluded that the plaintiff's arthritic hand pain was not a severe impairment (tr. 17) because she was not diagnosed with arthritis before March 31, 2003, her date last insured. (Tr. 46.) In fact, the plaintiff was diagnosed with osteoarthritis on only two occasions, in June of 2006, and in May of 2009. (Tr. 401, 496.) The ALJ did not address or even mention the plaintiff's osteoarthritis in his discussion about the plaintiff's credibility and thus the plaintiff's argument that her osteoarthritis diagnosis "show[s]" that she is credible is misplaced. Docket Entry No. 17, at 12.

---

the possibility of surgery "from the very beginning," it is logical to assume that the plaintiff's response to the ALJ's question was intended to relate to coccydynia, not lumbar spine, surgery. Clearly, Dr. Rosen had talked to the plaintiff about such surgery on more than one occasion. (Tr. 278.)

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 16) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge