IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| VIRGINIA ANITA SOLOMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:10-cv-00079 |
| v. ) | |
| ) | Judge Nixon |
| MICHAEL J. ASTRUE, ) | Magistrate Judge Griffin |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Virginia A. Solomon's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 16), filed with a Brief in Support (Doc. No. 17). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition. (Doc. No. 22.) Magistrate Judge Griffin subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and that the decision of the Commissioner of Social Security ("Commissioner") be affirmed. (Doc. No. 23 at 1.) Plaintiff filed an Objection to the Report. (Doc. No. 24.) Upon review of the Report, and for the reasons stated below, the Court **DENIES** Plaintiff's Motion, **ADOPTS** the Report in its entirety, and **AFFIRMS** the decision of the Commissioner.

I. BACKGROUND

  A. *Procedural Background*

Plaintiff protectively filed an application for Title II Disability Insurance Benefits ("DIB") on April 24, 2006. (Tr. 20.) Plaintiff alleged disability beginning on July 30, 1999. (*Id.*) The Social Security Administration ("SSA") denied her claim initially on September 13, 2006 (Tr. 47-49), and also upon reconsideration on December 15, 2006 (Tr. 51-54). On May 27,

2009, Plaintiff filed a timely written request for a hearing. (Tr. 23.) Administrative Law Judge ("ALJ") K. Dickson Grissom presided over the hearing held on December 2, 2008, in Cookeville, Tennessee. (Tr. 26.) Plaintiff appeared with counsel, gave testimony, and amended her alleged disability onset date to June 30, 1999. (Tr. 24-43.) The ALJ requested that an independent medical expert review the claimant's medical records and complete an interrogatory questionnaire. (Tr. 41.) On June 8, 2009, the ALJ held a supplemental hearing, at which a vocation expert ("VE") testified. (Tr. 500-06.) On July 15, 2009, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (Tr. 15.) Specifically, ALJ Grissom made the following findings of fact:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2003.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of June 30, 1999, through her date last insured of March 31, 2003 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: chronic coccydynia (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift, carry, and push/pull up to 40 pounds occasionally and 20 pounds frequently; stand and/or walk six hours in an eight-hour day; sit six hours in an eight hour day if allowed to sit on a cushion, or preferably the "donut" cushion. She is precluded from any climbing or ladders, ropes or scaffolds; and limited to no more than occasional climbing of stairs and ramps, bending from the waist to the floor, crouching crawling, kneeling or squatting. She is precluded from work around hazards, such as dangerous or moving machinery or unprotected heights, and she is precluded from the operation of motor vehicles. In addition, she should be allowed to have a sit/stand option.

6. Through the date last insured, the claimant was capable of performing past relevant work as a billing clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 30, 1999, the alleged onset date, through March 31, 2003, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-18, 21.)

On July 30, 2009, Plaintiff sought Appeals Council review of ALJ Grissom's decision. (Tr. 11.) The Appeals Council denied Plaintiff's request for review on June 29, 2010, rendering ALJ Grissom's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff filed this action on August 10, 2010, seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) (2010). (Doc. No. 1.)

On January 12, 2011, Plaintiff filed the instant Motion (Doc. No. 16) and a Memorandum in Support of the Motion (Doc. No. 17). Defendant filed a Response in Opposition on April 12, 2011. (Doc. No. 22.) On May 30, 2012, Magistrate Judge Griffin issued her Report, recommending that Plaintiff's Motion be denied and the decision of the Commissioner affirmed. (Doc. No. 23 at 1.)

On June 13, 2012, Plaintiff filed an objection to the Report. (Doc. No. 24 at 1.) Plaintiff objects to Magistrate Judge Griffin's recommended finding that ALJ Grissom correctly assigned little weight to the opinions of Plaintiff's treating physician, Dr. Barret Rosen. (*Id.* at 1-3.)

*B. Factual Background*

The Court adopts the facts as stated in the Background Section of Magistrate Judge Griffin's Report. (Doc. No. 23 at 2-8.)

3

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2009). It is limited, however, to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsee v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2010). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." *Richardson v. Pereles*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing is not to weigh the evidence or make credibility determinations, as these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have reached

4

a different factual conclusion on the merits than the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the Magistrate Judge's recommended finding that ALJ Grissom correctly accorded "little weight" to the assessment of Plaintiff's primary care physician, Dr. Barrett Rosen.*

Plaintiff asserts that the assessment of her primary care physician, Dr. Barrett Rosen, should not have been accorded "little weight" by ALJ Grissom. (Doc. No. 24 at 1.) According to Plaintiff, ALJ Grissom improperly adopted the opinions contained in Dr. Susan Bland's "Medical Interrogatory Physical Impairment(s)-Adults" report, rather than adopting Dr. Rosen's conclusions contained in the Medical Source Statement. (Doc. No. 24 at 1-3.) Plaintiff contends that the Medical Source Statement should have been accorded more weight because, contrary to ALJ Grissom's finding, Dr. Rosen's opinions are consistent with and supported by other medical evidence in the record. (*Id.*)

Plaintiff argues that the record supports and is consistent with the restrictions on Plaintiff's ability to work found by Dr. Rosen. (Doc. No. 24 at 2-3). Plaintiff claims that notes written by Dr. Rosen in 1997 and 2004—which state that Plaintiff cannot "sit for lengthy periods of time" (Tr. 262, 291)—corroborate the restrictions listed Medical Source Statement (Doc. No. 24 at 3). Likewise, Plaintiff argues that the elevation of her Lortab prescription from 5 mg to 7.5 mg in January of 1996 (Tr. 286), establishes that she suffered from coccygeal pain severe enough to qualify for disability (Doc. No. 24 at 1-2). Furthermore, Plaintiff claims that Dr. Rosen's choice to continue a conservative treatment plan (Tr. 254-278) does not necessarily indicate that the treatment plan was effective. (Doc. No. 24 at 2-3.) The conservative treatment plan is explained, Plaintiff contends, not by its effectiveness, but by her inability to pay for more

5

effective options suggested by Dr. Rosen, such as surgery and physical therapy. (*Id.*; Tr. 268, 271.) Additionally, Plaintiff argues that Dr. Rosen's medical notes, which state that Plaintiff may "go ahead with activities as tolerated" (Tr. 275), do not contradict the restrictions in the Medical Source Statement (Doc. No. 24 at 3). Rather, Plaintiff contends that the the notes are consistent because, at the time they were written, she was not engaged in any work or physically demanding activities. (*Id*). Finally, Plaintiff claims that Dr. Rosen's opinion must be given precedence over Dr. Bland's opinion because Dr. Rosen treated her over a long period, whereas Dr. Bland only reviewed her medical records. (*Id.*)

Generally, the opinions of treating physicians are entitled to greater weight than the opinions of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). A treating physician is one who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902 (2011). If the opinion of the treating physician as to the nature and severity of the claimant's condition is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," the ALJ must assign "controlling weight" to the medical opinion. *Id.* § 404.1527(d)(2) (2012); *see also Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

However, a treating physician's opinion is not always given precedence over all other medical opinions. To determine the proper weight that should be accorded to a treating physician's opinion, the ALJ must consider "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."

*Rogers*, 486 F.3d at 242. When discounting the opinion of a treating physician, the ALJ must provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating [physician's] medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2 p, 1996 WL 374188, at *5 (July 2, 1996)). Generally, the more support and better an explanation a treating physician provides for an opinion, the more weight it will be given. 20 C.F.R. §§ 404.1527(c)(3) (2012), 416.927(c)(3) (2011). Conversely, the less consistent an opinion is with the record, the less weight it will be given. *See* 20 C.F.R. at §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ supplied sound reasons for his determination to give Dr. Rosen's testimony little weight, and those reasons are supported by substantial evidence in the record. The ALJ explained that the objective medical evidence does not support and is inconsistent with the limitations stated by Dr. Rosen in the Medical Source Statement. (Tr. 20.) For instance, between April 2000 and December 2005, Plaintiff visited Dr. Rosen every three to six months to obtain medication and injections, during which time Dr. Rosen noted that Plaintiff experienced "significant" coccygeal pain and tenderness. (Tr. 254-78.) However, at no point do Dr. Rosen's treatment notes indicate that Plaintiff reported or exhibited any of the severe limitations contained in the Medical Source Statement. (*Id.*) Beyond general statements about the tenderness of the coccygeal area, the record is devoid of any such evidence. Similarly, the ALJ observed that in a January 2009 letter, Dr. Rosen noted that Plaintiff "has had no significant x-ray findings." (Tr. 478.) Thus, the ALJ concluded that Dr. Rosen's limitations are not supported by evidence culled from medical testing procedures. (Tr. 20.)

Plaintiff contends that the increase of Lortab medication from 5 mg to 7.5 mg in January of 1996 constitutes medical evidence establishing that she suffers from coccygeal pain severe

enough to support Dr. Rosen's opinions.  (Doc. No. 23 at 1; Tr. 286.)  Plaintiff fails to acknowledge, however, that Dr. Rosen reduced the prescription for Lortab back to 5 mg in March of 1998.  (Tr. 286.)  Further, an increase in medication does not necessarily support a finding that Plaintiff's pain was so severe as to warrant Dr. Rosen's Medical Source Statement restrictions.  Plaintiff's pain could have been only moderate at the 5 mg level, while an increase to 7.5 mg could have made the pain mild or negligible.  Indeed, the increase from 5 mg to 7.5 mg may suggest that, at some point, Plaintiff received doses beyond the level necessary to effectively manage her coccygeal pain.  Therefore, the Court finds that substantial evidence supports ALJ Grissom's finding that the changes in Lortab dosage do not provide support for Dr. Rosen's restrictions.

Plaintiff also argues that the note addressed "To Whom it May Concern" (Tr. 291), and the note excusing Plaintiff from jury duty (Tr. 262), constitute substantial, medically acceptable clinical and laboratory diagnostic evidence supporting Dr. Rosen's opinions (Doc. No. 23 at 2-3).  However, a physician's letter excusing a plaintiff from certain activities does not mandate a finding of disability, nor does it carry the same persuasiveness as the notes contained in a patient's treatment file.  *See Hamilton v. Astrue*, No. 2:10CV00009, 2010 WL 4669014, at *3 n.1 (W.D. Va. Nov. 10, 2010) (holding notes written by a treating physician excusing a plaintiff from work and jury duty are not entitled to controlling weight); *see also Davis v. Barnhart*, 197 F. App'x 521, 522 (8th Cir. 1998) (holding a letter excusing a plaintiff from jury duty does not mandate finding of disability).  Moreover, even if these notes did constitute persuasive medical evidence, they still fail to support Dr. Rosen's finding of the restrictions stated in the Medical Source Statement.  Dr. Rosen's 2004 note excusing Plaintiff from jury duty merely states that she is not "able to sit for long periods" (Tr. 262), while the 1997 note addressed to "Whom it

8

May Concern" states only that she "is unable to sit for lengthy periods of time" (Tr. 291). The notes fail to specify the length of time for which Plaintiff can continually sit or the medical evidence relied upon to reach these conclusions. The notes only contain conclusory statements that fail to support the Medical Source Statement's assertion that Plaintiff can sit for "less than 4 hours" (Tr. 373-74). Additionally, whereas the notes state that Plaintiff cannot sit for lengthy periods of time, they make no reference to how long she can sit while also standing and walking frequently pursuant to a "sit-stand option," as described in the VE's testimony (Tr. 504-505). Presumably, Plaintiff could be unfit for jury duty only because frequently standing and walking during court proceedings would be inappropriate. However, the ultimate question before the ALJ was whether Plaintiff could perform her past relevant work as a medical billing clerk, during which time she would have the opportunity to stand and walk throughout the workday. (*Id.*) Therefore, the notes are inapposite as to whether Plaintiff is fit to perform her prior job. Accordingly, the Court finds that, despite the presence of the note, the ALJ's decision to accord Dr. Rosen's opinion little weight was supported by substantial evidence.

Additionally as ALJ Grissom noted (Tr. 19-20), other evidence in the record is inconsistent with Dr. Rosen's assertion in a 2009 letter "that the restrictions I have described [in the Medical Source Statement] have been in place at least since June of 2000, if not before that time." (Tr. 478.) For example, in August of 2000 and September of 2007, Dr. Rosen wrote in his treatment notes that Plaintiff may "go ahead with activities as tolerated." (Tr. 274-75, 377.) ALJ Grissom could reasonably infer from this language that the limitations, if any, caused by Plaintiff's coccygeal pain were not as severe as those asserted by Dr. Rosen in the Medical Source Statement. Presumably, such strict limitations would have been explicitly spelled out. Instead, the treatment notes specify that Plaintiff may participate in "activities as tolerated,"

9

which suggests milder limitations (Tr. 274-75, 377.) Plaintiff contends, however, that ALJ Grissom erred by emphasizing that the treatment notes were inconsistent because, at the time they were written, Plaintiff did not work or engage in much activity. (Doc. No. 24 at 3.) Plaintiff's argument is unavailing because Dr. Rosen did not write that Plaintiff may continue to engage in activities in which she already participated. Instead, Dr. Rosen wrote that Plaintiff may "go ahead with activities as tolerated," without any directive that she only engage in her current activities or any suggestion that her current activities were curtailed by coccygeal pain. (*See* Tr. 274-75, 377.) Thus, the Court finds that substantial evidence supports the ALJ finding that Dr. Rosen's 2009 letter contradicted his treatment notes.

Further, substantial evidence supports ALJ Grissom's conclusion that the severe restrictions found by Dr. Rosen are inconsistent with both his treatment notes and Plaintiff's statements indicating that the coccygeal pain was effectively treated with injections and pain medication. (Tr. 19.) Between April 2000 and December 2005, Dr. Rosen's treatment plan for Plaintiff remained fairly consistent.. (Tr. 254-78.) Dr. Rosen injected the coccygeal area with Depo-Medrol and Marcaine, recommended physical therapy, and prescribed Lortab, Vicodin, Soma, and Vioxx for pain management. (*Id.*) During this time period, Dr. Rosen noted, on three separate occasions, that the conservative treatment regime effectively managed Plaintiff's pain. (Tr. 268, 275, 278.) On November 25, 2002, Dr. Rosen wrote that Plaintiff "responded well to the last injection but when the weather got cold has had recurrence of pain." (Tr. 268.) The treatment note thus substantially supports the inference that Plaintiff's pain was well managed before the onset of colder conditions. On August 18, 2000, Dr. Rosen wrote that Plaintiff experienced "recurrence of pain in her coccygeal area although 'it feels some [*sic*] better.'" (Tr. 275.) Again, this treatment note supports the inference that Plaintiff's pain had receded, before

10

recurring and then improving later with conservative treatment. Further, on April 14, 2000, Plaintiff reported that the pain "did pretty well following the last injection, but has recurred." (Tr. 278.) Moreover, on a medical history form completed on June 25, 2003, Plaintiff wrote that the conservative treatment regime "works effectively." (Tr. 266.)

Nonetheless, Plaintiff contends that the ALJ's conclusion about the effectiveness of the conservative treatment plan was not supported by substantial evidence because Dr. Rosen recommended surgery and physical therapy, which Plaintiff was unable to afford due to her dire financial conditions. (Doc. No. 24 at 2-3.) Thus, Plaintiff's inability to afford the recommended surgery is not apparently relevant. Plaintiff's argument is unconvincing because the mere fact that a physician discusses surgery does not preclude the possibility that a conservative treatment regime will effectively manage pain. Surgery might be the only option to totally eliminate the pain, even though the pain can be managed with conservative treatment; or, surgery may be convenient for the patient, who could then forego the inconvenience of receiving injections and taking prescription medication. Here, the record does not establish that surgery was needed because Plaintiff's pain was intolerably severe or causing significant limitations akin to those found in the Medical Source Statement. (Tr. 37 254-78.) Further, it appears from the record that financial inability was not the immediate cause of Plaintiff's decision not to have the surgery. During the hearing before ALJ Grissom on December 2, 2008, Plaintiff stated that she chose not to undergo surgery because she feared the risk of paralysis. (Tr. 37.) Plaintiff stated, "He gave me a 60/40 that I could be paralyzed or I could have dull pain and I just took the road to [not have surgery]." (Tr. 37.) Thus, the Court finds that substantial evidence supports the ALJ Grissom's conclusion that the severe restrictions found by Dr. Rosen are inconsistent with

11

treatment notes and statements made by Plaintiff indicating that the coccygeal pain was effectively mitigated with conservative treatment.

Finally, the Court rejects Plaintiff's assertion that the weight given to Dr. Rosen's opinions must supersede the weight of Dr. Bland's opinions because Dr. Rosen was Plaintiff's treating physician. As already noted, a treating physician is only given controlling weight when his or her opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2012); *see also Hensley*, 573 F.3d at 266. As outlined above, the Court finds that ALJ Grissom focused on the factor of factual support and provided "good reasons" for discounting Dr. Rosen's findings (Tr. 19-20), as required by SSR 96-2 p, 1996 WL 374188, at *5 (citing 20 C.F.R. § 404.1527(d)(2) (2012)).

Because ALJ Grissom's decision to discount the opinion of Dr. Rosen is supported by substantial evidence in the record, the Court must abide by the Commissioner's decision. For the above reasons, the Court finds that substantial evidence supports ALJ Grissom's decision assigning "little weight" to Rosen's opinion. Accordingly, the Court **DENIES** Plaintiff's Motion, **ADOPTS** the Report, and **AFFIRMS** the decision of the Commissioner.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion, **ADOPTS** the Report, and **AFFIRMS** the decision of the Commissioner. This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the __28th_____ day of August, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT